COMMUNITY ACTION RESEARCH GROUP et al., Appellants,

v.

IOWA STATE COMMERCE COMMISSION, Appellee.

No. 61964.

Supreme Court of Iowa.

Feb. 21, 1979.

Gordon E. Allen, of Allen, Babich & Bennett, Des Moines, for appellants.

Gary D. Stewart, Asst. Commerce Counsel, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK and LARSON, JJ.

HARRIS, Justice.

Section 17A.7, The Code, a section in the Iowa Administrative Procedure Act (IAPA), provides for proposing the adoption of agency rules. Such a proposal was made in this case. The question is not as to the justification or wisdom of the proposed rule. Rather, we must decide whether the agency responded to the request in a manner authorized by the statute. The trial court answered the question in the affirmative and we agree.

In a petition filed with the Iowa commerce commission, the Community Action Research Group (CARG) asked for adoption of the following rule:

"To forbid those utilities under jurisdiction of the Iowa Commerce Commission to require customers to contribute to the development of the Clinch River Breeder Reactor or any other project which conflicts with our international efforts to control nuclear proliferation."

The commission dismissed the petition on July 20, 1977. The commission conceded that the president and other administration officials have ". . . judged the plutonium breeder reactor to be a 'potential security risk' and have therefore determined to defer indefinitely construction of the Clinch River project."

But the commission went on to state:

"Needless to say, this important national issue has not yet been resolved at the federal level. On July 11, 1977, the United States Senate voted to approve funding of the project substantially in excess of that requested by the administration.

"Particularly in these circumstances, we find it inappropriate to adopt a rule which has the effect of stating that research and development expenditures on the Clinch River project are per se imprudent, and therefore not includable in cost of service for rate-making purposes.

"In any rate proceeding, petitioners have the opportunity to petition for intervention and to prove that any expenditures, including those in question here, are imprudent and unreasonable, and therefore, should be excluded from cost of service."

CARG thereafter petitioned the trial court to review this ruling, contending that the commission failed to rule "on the merits" of the petition in dismissing it. This was alleged to be in violation of § 17A.7 which provides:

"An interested person may petition an agency requesting the promulgation, amendment or repeal of a rule. Each agency shall prescribe by rule the form for petitions and the procedure for their submission, consideration and disposition. *Within sixty days after submission of a petition, the agency either shall deny the petition in writing on the merits, stating its reasons for the denial,* or initiate rule-making proceedings in accordance with section 17A.4, or issue a rule if it is not required to be issued according to the procedures of section 17A.14, subsection 1." (Emphasis added.)

CARG brought this appeal from the trial court's refusal to overturn the commission's dismissal.

I. Judicial review for acts of the commerce commission is provided in § 476.13, The Code, which implements the IAPA (chapter 17A, The Code). Section 17A.19(8) sets the framework for judicial review. Section 17A.20 grants a right of appeal to this court from any final judgment of a reviewing district court.

On appeal we are not bound by the findings of the trial court. As stated in *Hoffman v. Iowa Dept. of Transp.,* 257 N.W.2d 22, 25 (Iowa 1977):

"An appeal from the determination of the district court is allowed under § 17A.20. Our review *in a contested case*

under § 17A.20 is not de novo. Our task is to review the record in the manner specified in § 17A.19(7) and make anew the judicial determinations specified in § 17A.19(8). Our review is limited, as the district court's review should have been, to the record made before the hearing officer." (Emphasis added.)

But the present appeal does not involve a contested case and we should first determine whether that fact alters our scope of review. Under the IAPA there are three types of administrative agency actions: (1) informal agency adjudication; (2) contested case, sometimes called formal adjudication; and (3) rulemaking. See generally Bonfield, The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act, 63 Iowa L.Rev. 285, 286–287 (December 1977). Only two of the three are procedurally regulated by the IAPA. Bonfield, The Iowa Administrative Procedure Act, Part I, 60 Iowa L.Rev. 731, 925 (April 1975).

■ We see nothing in § 17A.19 which indicates the standard for our review in a rule-making case should differ from the standard in a contested case. The only limitation on the stated standard for judicial review in § 17A.19(8) appears in subsection "f." That limitation (unsupported ". . . in the record made before the agency . . .") is addressed exclusively to contested cases. Accordingly *Hoffman,* in general, dictates the standard for our review in this rulemaking case. There is one difference. Section 17A.19(7) provides that a court sitting in review of agency action (except for a court reviewing contested cases) is free to receive and consider such additional evidence as it feels is appropriate. Such additional evidence, of course, is to be considered in addition to that offered before the agency.

In this case the parties were free to offer additional evidence to the district court; the record for our review on appeal consists of evidence presented both to the commission and to the district court.

II. The question narrows to whether the commissioner's dismissal of the petition was "on the merits," under § 17A.7, The Code. CARG urges an interpretation which would demand that the commission, in order to reject their proposed rule, must necessarily consider and reject CARG views on the environmental issue in which CARG is interested. The commission, on the other hand, argues that the phrase "on the merits" allows for a dismissal if dismissal is merited in the public interest for reasons outside any exploration of the environmental dispute.

This is a case of first impression. We cannot look for precedent from other jurisdictions because the "on the merits" language of § 17A.7 is unique to Iowa's administrative law. Compare with 5 U.S.C. § 553(e) 1970; § 5 of the Model State Administrative Procedure Act (1946), 9C Uniform Laws Annotated 179. See Bonfield, Iowa Administrative Procedure Act, Part I, 60 Iowa L.Rev. 731, 893 (April 1975).

In interpreting this unique provision we can turn, as we have many times in the past, to the helpful article of Professor Bonfield, supra. In discussing a sanction for an agency's failure to act properly on a petition for rulemaking, pursuant to § 17A.7, Bonfield recognizes that, through the filing of petitions, interested parties are ". . . only seeking to induce agencies, through use of a device meant to accomplish that result, to engage in a reasoned reconsideration of the existing state of the law and to change it if, in the agencies' discretion, that seems appropriate. . ." 60 Iowa L.Rev. at 894. Commenting further on chapter 17A, he adds:

". . . Even if the petition was handled properly, the agency could decline to alter the existing rules or issue any new rules. The reason for this is that section 7 in no way limits the agency's discretion in deciding whether the law should continue as it is or should be changed. It is only meant to assure that agencies give fair consideration to such requests for a change in rules or an addition to rules. This may explain why no administrative procedure act imposes a remedy as drastic as that found in section 3(2) for an agency's failure

to follow the requirements of section 7." Id. at 895.

■ The standard of "fair consideration" mentioned by Professor Bonfield, is in keeping with the purpose of § 17A.7 which is ". . . to enable interested persons, on their own initiative, to induce a reasoned consideration of the propriety of the issuance, amendment, or repeal of a rule by those authorized to make and modify rules. . . ." 60 Iowa L.Rev. at 892. The provision is otherwise explained: ". . . That is, this provision allows the public to prod an agency to action in a way that seeks to ensure that those satisfied with the status quo are forced to reexamine their positions in light of new views and changed conditions. . . ." See Id.

■ We agree that § 17A.7 requires only that an agency give fair consideration to the propriety of issuing the proposed rule. It does not require the agency to take a stand on the substantive issues that might prompt the proposal of a rule. The trial court was right in so holding.

This view is similar to that adopted by the United States Supreme Court in its judicial review of agency actions subject to the federal administrative procedure act. *Bowman Trans. v. Arkansas-Best Freight,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447, 456 (1974); *Burlington Truck Lines v. United States,* 371 U.S. 156, 167–168, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207, 215–216 (1962). See also *Burlington Northern, Inc. v. United States,* 555 F.2d 637 (8 Cir. 1977).

■ In this light the commission's ruling did reject the proposed rule "on the merits." As seen in the dispute between the President and Senate, mentioned by the commission, there was presently no clear conclusion to be reached on the usefulness of the Clinch River reactor.

It is not for the courts to question the wisdom of such a position. It is enough to hold it was one the commission was legally entitled to take.

AFFIRMED.