0261

Marvin Dana BILTON, Kay B. Bilton, and Carmen Bilton, Respondents, v. BEST WESTERN ROYAL MOTOR LODGE, And Aetna Insurance Company, Appellants.

(321 S. E. (2d) 63)

Court of Appeals

*Charles E. Carpenter, Jr.,* and *W. Hugh McAngus,* both of *Richardson, Plowden, Grier & Howser,* Columbia, *for appellants.*

*Charles B. Barnwell, Jr.,* of *Horger, Horger & Barnwell,* Orangeburg, *for respondents.*

Sept. 11, 1984.

SHAW, Justice:

This is a workers' compensation action alleging an employee death occurred during the scope and course of employment. The Full Commission and the circuit judge reversed the single Hearing Commissioner by ruling the appellants, Best Western Royal Motor Lodge and Aetna Insurance Company, were estopped from contesting liability and the employee, Marvin D. Bilton, died during the course of his employment. We reverse as to the issue of estoppel and affirm the holding Bilton died during the course of employment.

The decedent-Marvin Bilton was manager of Best Western Royal Motor Lodge in Santee. He was on call twenty four hours a day. As compensation, Bilton received $1,000/month, the use of a two bedroom apartment at the motel where he lived with his wife and daughter (his only dependents and respondents herein), and all utilities for the apartment except long distance phone calls. Bilton was provided a car for business and personal use and received commissions on referrals to another Best Western owned by his employer. He and his family also received some free meals.

The testimony indicated Bilton to be a very methodical and responsible employee. Part of his duties included checking the lights on road signs advertising the motel.

On the night in question, March 16, 1980, Mrs. Bilton last saw her husband about 11:00 p.m. when he came to tell her good-night. Reverend Thomas Mellette, Bilton's supervisor and manager of the other Best Western located in Summerton, talked to Bilton on the phone between 10:00 p.m. and 10:30 p.m. Mellette's wife, co-owner of the two motels, talked to Bilton on the phone about 11:10 p.m. Around 11:25 p.m. Mellette departed for Bilton's motel to obtain some charge card summary forms. He found the motel lobby locked and deserted. After obtaining the forms elsewhere, he returned to the motel and found the situation unchanged. At this point, Mellette did not consider the situation abnormal and believed Bilton may have been checking the road signs. As he was returning to the Summerton motel, he saw an ambulance pull into a rest area on the southbound lane of Interstate 95. On impulse, Mellette followed the ambulance by crossing over the

interstate's median. Bilton was found at the rest area with gunshot wounds to the head from which he died.

Mellette took Bilton's keys and returned to the Santee motel. Upon entering the lobby, he discovered many things out of the ordinary. All of the lobby lights were on; the television was on; the lights normally on outside the lobby were off; the sign always put on the lobby door informing late night guests how to contact Bilton was not on the door; the lobby switchboard was not connected to the telephone in Bilton's apartment as it always was at night so that guests could call Bilton; the cash drawer was open and the cash tray missing; Bilton's calculator was on with the tape still in it; and the credit card slips were in disarray. The key to the cash drawer has never been found. Mellette found some cash in a slot for registration forms for Room 13 (which dosen't exist). According to a pre-arranged agreement between Bilton and Mrs. Mellette, Bilton was to place money in this slot should he suspect a robbery. His testimony on the condition of the lobby was confirmed by Mrs. Bilton and Mrs. Mellette.

After Bilton's death, Mrs. Bilton was told several times by Best Western and Aetna this was a compensable case. The Industrial Commission was informed by letter that Best Western and Aetna considered this a compensable case. However, compensability was never admitted in the employer's first report of injury or in any formal pleading. Mrs. Bilton was advised she would need an attorney although she talked to a relative who is a practicing lawyer. She made no efforts toward building a case to prove her entitlement under the workers' compensation laws. A hearing was set before a single Commissioner to determine Bilton's dependents and the amount of compensation to which they were entitled.

Prior to the hearing, the cash tray from the cash drawer was found in a broken ice machine in a storage room adjacent to the motel lobby. Money was in the cash tray, but, with the other money found, it did not total the amount of cash Bilton was suspected of having on the night of his death. Because of this discovery, Best Western and Aetna contested their liability to pay workers' compensation benefits. At the hearing set for dependency and compensation, they moved for and received a continuance. All of this occurred well within the two year statutory period for filing death claims as provided

in Section 42-15-40 of 1976 South Carolina Code of Laws (as amended, 1979).

The single Hearing Commissioner ruled Best Western and Aetna were not estopped from contesting liability and that Bilton did not die during the course of his employment. The Full Commission reversed, holding Best Western and Aetna was estopped from contesting liability and that Bilton died during the course of his employment. Mrs. Bilton and her daughter were awarded $197/week not to exceed 500 weeks and medical and funeral expenses. The circuit judge affirmed the Full Commission's order.

For our initial consideration is a motion filed by respondents to strike portions of the appellant's reply brief as being in violation of Supreme Court Rule 8, Section 7 — matters not appearing in the Transcript of Record. In their return to motion, Best Western and Aetna claim their violation of this rule is in response to matters outside the record appearing in the respondents' brief. We have examined the alleged errors and find both the respondents' brief and the appellants' reply brief to be in violation.

Respondents claim unilateral acts of appellants in initially denying compensability deterred them from deposing certain witnesses, whose testimony is the matter outside the record, while they were in South Carolina and subject to subpoena. (These witnesses are from Canada.) While this is undoubtedly true, respondents did not obtain the written consent of opposing counsel nor did they petition the Supreme Court as required to insert additional facts. Supreme Court Rule 8, Section 7; *Furman v. Nelson,* 208 S. C. 249, 37 S. E. (2d) 741 (1946). The appellants also neither sought nor obtained such consent or permission. They presented their own version of the Canadian witnesses' testimony and ask this court to consider all such testimony since the respondents improperly "opened the door" to this evidence.

The fact that one party has violated Supreme Court Rules does not give the other party the right to do so.

While we may consider such evidence as a matter of grace, *State v. Orr,* 225 S. C. 369, 82 S. E. (2d) 523 (1954), we decline to do so. Each sides' version of the testimony is different, the witnesses are unavailable to testify or to be deposed, and permission to insert this extraneous matter was never

requested nor received. Accordingly, the facts improperly stated in both parties' briefs are not considered. *Becker v. Uhe*, 221 S. C. 334, 70 S. E. (2d) 346 (1952).

Mrs. Bilton argues appellants should be estopped from contesting liability because of their previous admissions of compensability. The essential elements of an equitable estoppel, as related to the party claiming the estoppel, are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. It is of the essence of equitable estoppel that the party entitled to invoke the principle shall have been misled to his injury. *S. C. State Hwy. Dept. v. Metts*, 270 S. C. 73, 240 S. E. (2d) 816 (1978); *Murphy v. Hagan*, 275 S. C. 334, 271 S. E. (2d) 311 (1980).

We fail to see how Mrs. Bilton has been harmed or prejudiced. During the period when she believed Best Western and Aetna were not going to contest liability, the statute of limitations for filing notice of a claim did not run. Section 42-15-40. She was entitled to and received a full hearing on the merits at which she was represented by counsel. The only prejudice suffered has been the inability to depose the Canadian witnesses. However, Best Western and Aetna suffered this same prejudice. Neither party was able to timely depose these witnesses or have them testify. As stated, that evidence is not considered. Mrs. Bilton will suffer no injury from the non-application of the doctrine of estoppel. *Lower Main Street Bank v. Parker*, 189 S. C. 320, 1 S. E. (2d) 181 (1939).

Further, Mrs. Bilton was fully knowledgeable of all facts known to Best Western and Aetna. It wasn't until the discovery of the cash tray in May of 1980 the appellants began to reconsider their position. Mrs. Bilton knew of this discovery. Any information the police were willing to disclose was equally available to both parties. The decision to contest liability after initially admitting it was not based on information unknown and unavailable to Mrs. Bilton. The doctrine of estoppel clearly does not apply under these circumstances.

The cases cited by Mrs. Bilton in support of her argument that estoppel lies are distinguishable. While statements made in the employer's first report of injury to the Industrial

Commission may be used as declarations against interest, *Sligh v. Newberry Electric Cooperative*, 216 S. C. 401, 58 S. E. (2d) 675 (1950), that report merely stated that what Bilton was doing when the accident ocurred was unknown. Best Western and Aetna never admitted liability in any formal pleading either. *See Standard Surety & Casualty Co. of N. Y. v. Sloan*, 180 Tenn. 220, 173 S. W. (2d) 436 (1943). As stated above, the statutory period for filing a claim never ran. *Lovell v. C. A. Timbes*, 263 S. C. 384, 210 S. E. (2d) 610 (1974); *Robertson v. Brissey's Garage, Inc.*, 270 S. C. 58, 240 S. E. (2d) 810 (1978). And finally, this is not a situation where Bilton was misled as to whether he was covered by workers' compensation insurance. *Ham v. Mullins Lumber Co.*, 193 S. C. 66, 7 S. E. (2d) 712 (1940); *Middleton v. Cantley Construction*, 278 S. C. 154, 293 S. E. (2d) 311 (1982).

Mrs. Bilton next claims the parties entered into an agreement as to compensation which had not been approved by the Commission and thus was voidable only by herself and her daughter. She cites Section 42-17-10 in support of this claim. This statute reads:

> If more than seven days after the date of an injury or at any time in case of death, the employer and the injured employee or his dependents reach *an agreement in regard to compensation* under this title, a memorandum of the agreement in the form prescribed by the Commission, accompanied by a full and complete medical report shall be filed with the Commission within fifteen days after agreement has been reached by the parties for approval of the Commission; otherwise, such agreement shall be voidable by the employee or his dependents. (emphasis added)

We do not believe "an agreement in regard to compensation" had been reached by the parties within the meaning of Section 42-17-10. There was never an agreement, nor any discussion, as to the amount of compensation to be paid. To have such an agreement, there must be a definite and certain amount of compensation set therein. *Angelina Cas. Co. v. Bennett*, 415 S. W. (2d) 271 (Tex. Civ. App. 1967). The agreements held binding by the South Carolina Supreme Court have all contained a definite and certain amount of compensation. *See*

*Atkins v. Charleston Shipbuilding & Drydock Co.*, 206 S. C. 63, 33 S. E. (2d) 46 (1945); *Allen v. Benson Outdoor Advertising Co.*, 236 S. C. 22, 112 S. E. (2d) 722 (1960); *Singleton v. Young Lumber Co.*, 236 S. C. 454, 114 S. E. (2d) 837 (1960). Also the purported agreement was not in memorandum form prescribed by the Commission. The record does not show a settlement agreement in the proper form was ever filed for approval with the Industrial Commission. *Rich v. Dyna Technology, Inc.*, 204 N. W. (2d) 867 (Iowa 1973). A letter to the Industrial Commission containing only an admission of compensability does not constitute an agreement under Section 42-17-10.[1]

Finally, Best Western and Aetna claim the Commission's and circuit court's conclusion Bilton died during the scope and course of his employment is not supported by substantial evidence. It is now well settled in South Carolina that conclusions of the Industrial Commission will not be disturbed by the courts unless they are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Section 1-23-380(g)(5) of the Code. "Substantial evidence" is something less than the weight of evidence. It is not a mere scintilla of evidence either, nor evidence viewed blindly from one side of the case. Rather, it is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrations agency's finding from being supported by substantial evidence. *Lark v. Bi-Lo*, 276 S. C. 130, 276 S. E. (2d) 304 (1981); *Ellis v. Spartan Mills*, 276 S. C. 216, 277 S. E. (2d) 590 (1981).

---

[1] See also *Mackery v. Kerr-McKee Chemical Co.*, 280 S. C. 265, 312 S. E. (2d) 565 (S. C. App. 1984), where it was held that a workers' compensation settlement agreement is not reached until there is a writing, signed by the parties, manifesting the *terms* of the compromise. Not only were there no terms contained in the letter, but it was also not signed by Mrs. Bilton or her daughter.

The Full Commission found one of two sets of events occurred on March 16, 1980, and either one supported the conclusion Bilton died during the scope and course of his employment. The fact these conclusions are inconsistent does not prevent the Commission's finding from being supported by substantial evidence.

We believe the record contains credible and substantial evidence to support the conclusion Bilton was abducted in a robbery. Admittedly, this conclusion is based on circumstantial evidence and inferences drawn from such evidence; however, circumstantial evidence may be relied upon to support a finding of fact or an award in workers' compensation cases. *Fowler v. Abbot Motor Co.*, 236 S. C. 226, 113 S. E. (2d) 737 (1960). To support an award for an unwitnessed death in a workers' compensation case when the award is based upon circumstantial evidence, the evidence need not reach such a degree of certainty as to exclude every reasonable or possible conclusion other than that reached by the Industrial Commission. *Jake v. Jones*, 240 S. C. 574, 126 S. E. (2d) 721 (1962).

Substantial evidence supports the Commission's finding. This court cannot substitute its judgment for that of the Industrial Commission as to the weight of the evidence on questions of fact. Also, we cannot say the Commission's decision was clearly erroneous in view of the substantial evidence on the whole record. *Lark v. Bi-Lo, supra.* Accordingly, we must affirm their finding that Bilton died during the scope and course of his employment.

Best Western and Aetna excepted to the amount of compensation awarded Mrs. Bilton and her daughter. This exception was not argued in their brief nor at oral argument and is thus deemed abandoned for purposes of this appeal. *Blakeley v. Rabon*, 266 S. C. 68, 221 S. E. (2d) 767 (1976); *Beach Co. v. Charleston County School Dist.*, 263 S. C. 7, 207 S. E. (2d) 406 (1974). In any event, a review of the record convinces us that the amount awarded by the Commission and affirmed by the circuit court was proper.

Affirmed.

BELL and CURETON, JJ., concur.