1210

CHARLESTON TELEVISION, INC., Respondent v. SOUTH CAROLINA BUDGET AND CONTROL BOARD, South Carolina Educational Television, and Tall Tower, Inc., Appellants.

(373 S. E. (2d) 892)

Court of Appeals

*T. Travis Medlock, Atty. Gen., Joseph D. Shine, Chief Deputy Atty. Gen., Charles W. Gambrell, Jr., Asst. Atty. Gen., Samuel L. Wilkins, Staff Attorney, D. Reece Williams, III,* of *Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, M. Elizabeth Crun,* of *McNair Law Firm, P.A.,* Columbia, and *Robert L. Clement, Jr.,* of *Young, Clement, Rivers & Tisdale,* Charleston, *for appellants.*

*Dwight F. Drake, Williams C. Hubbard* and *Barbara H. McArthur,* of *Nelson, Mullins, Riley & Scarborough,* and *Belser, Baker, Barwick, Ravenel, Toal & Bender,* Columbia, *for respondent.*

Heard Jan. 19, 1988.

Decided Aug. 8, 1988.

GARDNER, Judge:

The appealed order was the result of an appeal taken under § 1-23-150, Code of Laws of South Carolina (1976), as amended, and held that the regulations of the South Carolina Budget and Control Board (the Board) do not comply with § 11-35-1590, Code of Laws of South Carolina (1976), as amended, and that a lease hereinafter described awarded by South Carolina Educational Television Commission (SCETV) to Tall Tower, Inc., (Tall Tower) is null and void as not having been awarded and approved in conformance with statutory law. We reverse and remand. The result of this case hinges upon this Court's interpretation of the following statutes quoted in pertinent part with the identification of the corresponding sections of the Code of Laws of South Carolina (1976) as amended:

§ 11-35-1510. Methods of source selection.
Unless otherwise provided by law, all state contracts shall be awarded by competitive sealed bidding, pursuant to § 11-35-1520, except as provided in: [Emphasis ours.]

\*   \*   \*   \*   \*   \*

(10) Section 11-35-1590 (Leasing of Real Property for Governmental Bodies);....

\*   \*   \*   \*   \*

§ 11-35-1590. Leasing of real property for governmental bodies.
(1) *Designation of Board as Single Central Broker.* The board is hereby designated as the single central broker for the leasing of real property for governmental bodies. No governmental body shall enter into any lease agreement or renew any existing lease except in accordance with the provisions of this Section.
(2) *Notification as to Need When State-Owned Property is Unavailable.* When any governmental body needs to acquire real property for its operations or any part thereof and state-owned property is not available, it shall notify the Division of General Services of its requirement on rental request forms prepared by the

division. Such forms shall indicate the amount and location of space desired, the purpose for which it shall be used, the proposed date of occupancy and such other information as the division may require.

Upon receipt of any such request, the division shall conduct an investigation of available rental space which would adequately meet the governmental body's requirements, including specific locations which may be suggested and preferred by the governmental body concerned. When suitable space has been located which the governmental body and the division agree meets necessary requirements and standards for state leasing as prescribed in regulations of the board as provided for in subsection (3) of this Section, the division shall give its written approval to the governmental body to enter into a lease agreement. In the event the governmental body and the division fail to reach agreement with regard to the appropriate property for leasing, the controversy shall be referred to the board which shall make a final determination of the matter. All proposed lease renewals shall be submitted to the division by the time specified by the division. (Emphasis ours.)

(3) *Promulgation of Regulations.* The board shall promulgate regulations to implement the provisions of this Section which shall include:

(a) Procedures for governmental bodies to apply for rental space.

(b) Flexible cost standards for rental space.

(c) Procedures for competitive bidding[1] where feasible. (Emphasis ours.)

(The conclusion we reach, and, we think, a proper analysis of this case, is the result of a synthesis of the above-emphasized portions of the statute.)

Additionally, S. C. Code Regs. 19-445.2120 (1976) of the Budget and Control Board (the Board) is most relevant because the question of whether this regulation exceeded the

---

[1] Section 11-35-1590(3)(c) at most requires regulations procedures for competitive bidding where feasible in the leasing of real property for governmental bodies; the statute does not require the bidding to be sealed as is required under § 11-35-1510.

authority of the Board is a question which we address but which was not expressly addressed by the appealed order. The regulation provides:

19-445.2120 Lease and/or Rental of Office Space and Other Real Property.

A. Lease of Non-State-owned Real Property.

No governmental body shall contract for the lease, rental, or use of non-State-owned real property without approval of the Division of General Services, except as specified in Subsection C. Requests shall be directed to the Division of General Services, Real Property Management Section. The Division of General Services shall negotiate all leases of non-State-owned real property unless the governmental body has been certified by the Materials Management Office.

In addition to the above statutes and Reg. 19-445.2120 we hold that § 1-23-126, Code of Laws of South Carolina (1976), as amended, is applicable to this decision; this statute provides:

§ 1-23-126. Petition requesting promulgation, amendment or repeal of regulation.

An interested person may petition an agency in writing requesting the promulgation, amendment or repeal of a regulation. Within thirty days after submission of such petition, the agency shall either deny the petition in writing (stating its reasons for the denial) or shall initiate the action in such petition.

This action was brought under § 1-23-150, Code of Laws of South Carolina (1976), as amended; this statute provides:

§ 1-23-150. Appeals contesting authority of agency to promulgate regulation.

(a) Any person may petition an agency in writing for a declaratory ruling as to the applicability of any regulation of the agency or the authority of the agency to promulgate a particular regulation. The agency shall, within thirty days after receipt of such petition, issue a declaratory ruling thereon.

(b) After compliance with the provisions of paragraph

(a) of this section, any person affected by the provisions of any regulation of an agency may petition the Circuit Court for a declaratory judgment and/or injunctive relief if it is alleged that the regulation or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff or that the regulation exceeds the regulatory authority of the agency. The agency shall be made a party to the action. [Emphasis ours.]

With the above statutes in mind, we review the facts of this case and the related case of *Tall Tower, Inc. v. South Carolina Procurement Review Panel*, 294 S. C. 225, 363 S. E. (2d) 683 (1987).

The cases arise from the long-standing efforts and desires of ETV to have its Charleston television station broadcast antenna located on a 2,000-foot television tower, the maximum height allowable under federal regulations, and much higher than any existing tower in the Charleston area. In late 1966 and early 1967, the three commercial television stations in Charleston, WCSC (Tall Tower and Channel 5), WCBD (Media General or Charleston Television and Channel 2) and WCIV, Inc. (Channel 4), entered into a joint venture agreement to construct a 2,000-foot tower in the Charleston area. In 1969, ETV became a joint venturer with the three stations but later withdrew and participated only as a potential lessee of the tall tower venture of the three commercial stations. From the time of the initial joint venture agreement until July 1985, the only person or persons or legal entity known attempting to build a 2,000-foot television tower in the Charleston area was this joint venture. Throughout this period, much negotiation took place among ETV, Tall Tower, Charleston Television and WCIV, Inc., regarding the construction of a 2,000-foot television tower on a joint venture basis. It took years of litigation to obtain the appropriate Federal Communications Commission and Federal Aviation Administration licenses and approvals for a tower of this height. This litigation was completed on May 17, 1985, and approval of the construction of the 2,000-foot tower was received.

The joint venture agreement eventually was abandoned. In January 1984, Tall Tower proposed that it construct the

tower and lease broadcast antenna space on the tower to ETV and the other two commercial stations, including Charleston Television. From January 1984 to June 1985, Tall Tower and Charleston Television had extensive negotiations regarding the lease of antenna space on the 2,000-foot tower to be built on property which was jointly owned by the two parties. Tall Tower also negotiated during the period with ETV and the other commercial station for lease of space. After an exchange of letters between Tall Tower and Charleston Television, both of these parties determined that each would proceed with construction of their respective 2,000-foot tower projects.

From that point forward the web of this litigation began to be woven.

In the 1985-1986 General Appropriations Bill, ETV was allocated funds to lease space on a 2,000-foot tower in Charleston. In June 1985, ETV, in consultation with the Attorney General's Office and Property Management Office of the Budget and Control Board, began specific negotiations with Tall Tower to lease space on its 2,000-foot tower. These negotiations continued through the fall of 1985.

On August 5, 1985, after learning that Charleston Television had determined to build a second 2,000-foot tower in the Charleston area, the Assistant Attorney General representing ETV contacted Charleston Television's attorney to determine whether it had any interest in leasing space on its tower to ETV.

On November 13, 1985, Charleston Television was asked to make a lease proposal to the Attorney General's Office by November 15, 1985. Charleston Television made a general proposal to lease space on its tower to ETV on November 15, 1985. On November 18 and 25, 1985, Charleston Television made specific offers to lease space to ETV for 25 and 50 years at fixed lease payments or for 5, 10, 25 and 50 years at fixed payments plus a prorated share of taxes and insurance.

The Attorney General's Office then solicited new offers from Tall Tower on December 2, 1985, which Tall Tower had to submit to ETV by December 4, 1985. On December 4, 1985, Tall Tower submitted its lease proposal. On December 6, 1985, the Attorney General asked for and received an offer

from Charleston Television in the category not previously submitted by it, the 10-year all-inclusive lease payment, an option submitted in the December 4, 1985 Tall Tower offer.

ETV wanted a 50-year tower lease. ETV received 50-year lease proposals from both Tall Tower and Charleston Television, which called for two types of optional payment plans, with the payments spread over various time periods. The first type payment plan (Type I) was an all-inclusive, fixed annual payment. This type payment plan had payments spread over increments of 10, 25 or 50 years. The second type payment plan (Type II) had a fixed rental payment, plus a share of taxes and insurance costs. This type payment plan had fixed rental payments spread over a period of 5, 10, 25 or 50 years with an additional share of taxes and insurance to be paid to the lessor in each of the 50 years. Both Tall Tower and Charleston Television submitted lease agreements to ETV containing each of the payment plans with their respective time periods. ETV had each of the plans converted to 1986 equivalent dollars.

Tall Tower submitted the least costly plan of any of the Type II payment plans which required taxes and insurance to be paid separately in addition to rent over the 50-year term of the lease. Charleston Television submitted the least costly plan of any of the Type I payment plans which required all inclusive, fixed annual payments.

After several meeting of the ETV Commission, ETV on January 23, 1986 determined to award the lease to Tall Tower under its Plan No. 5, the least expensive Type II payment plan which was valued at $1,180,434.00 in 1986 equivalent dollars. Charleston Television's Plan No. 1, a Type I payment plan was valued at $1,094,962.00 in 1986 equivalent dollars. There were, allegedly, technical differences in the bids including the orientation of the Tower and for this reason the higher bid of Tall Tower was accepted by ETV.

General Services approved ETV's award on January 23, 1986. On January 23, 1986, the Budget and Control Board met and approved ETV's decision to award the lease to Tall Tower pursuant to Part II, § 5 of the 1985-1986 Appropriations Act, which requires the Board to approve and record all real property transactions by state agencies. On January

28, 1986, the lease between ETV and Tall Tower was executed.

On January 28, 1986, Charleston Television protested the award under the provisions of the South Carolina Consolidated Procurement Code. The initial protest was heard by the Chief Procurement Officer, who upheld the lease award to Tall Tower and denied Charleston Television's protest. Charleston Television then appealed to the Procurement Review Panel, which conducted a thorough administrative hearing.

The Panel determined that the lease should be rebid on the ground that "there is no evidence that ETV ever made available to [Charleston Television] information on the technical superiority of the 315 degree orientation or that it provided information to offerors which would allow them to consider this as a cost item in formulating an offer, . . . ."

Tall Tower and ETV then appealed to the circuit court which affirmed the decision of the Panel. On appeal to the Supreme Court, the circuit court order was reversed on the grounds that the trial court erred in considering Procurement Code sections concerning evaluation criteria because the lease was governed soley by § 11-35-1590, Code of Laws of South Carolina (1976), as amended. *Tall Tower, Inc. v. South Carolina Procurement Review Panel, supra.*

In the meantime, on January 13, 1986, Charleston Television served a petition for a declaratory ruling on the South Carolina Budget and Control Board pursuant to § 1-23-15(a), Code of Laws of South Carolina (1976), as amended. This petition sought, *inter alia*, a "declaration ruling that the Budget and Control Board did not have the authority to promulgate" Reg. 19-445.2120 and "that said regulation is of no force and effect."

On February 13, 1986, the Board issued its declaratory ruling. The declaratory ruling determined, *inter alia*, that competitive bidding, as mentioned in § 11-35-1590(c), Code of Laws of South Carolina (1976), as amended, was not feasible, that the Board had the authority to promulgate Reg. 19-445.2120 and that the regulation was applicable to its decision. This ruling was consonant with the later Supreme Court decision in the case of *Tall Tower, Inc. v. South Carolina Procurement Review Panel, supra,* which was de-

cided during the process of the litigation before us.

Charleston Television then served and filed a petition for declaratory judgment and injunctive relief pursuant to § 1-23-150(b). Basically, this petition (1) alleged the history of this affair, (2) alleged that Charleston Television was threatened with irreparable harm to its right to the lease unless no injunction was issued, (3) alleged that the petitioners were likely to prevail because § 11-35-1590 mandated a regulation provided for competitive bidding where feasible and, admittedly, the Board had not promulgated such a regulation, (4) alleged that the holding by the Board that competitive bidding was not feasible was erroneous and (5) alleged that it had exhausted its administrative remedies before the Board; the prayer sought (1) a temporary and permanent injunction and (2) declaratory judgment that the Board did not have the authority to enter into the lease.

The Board's answer denied all the allegations set out above. ETV and Tall Tower were then made parties defendants; their answer contained (1) a denial of the petition's allegations, (2) affirmative defenses which included an allegation that competitive bidding was infeasible and (3) an assertion that Charleston Television should have petitioned for such a regulation pursuant to § 1-23-126, Code of Laws of South Carolina (1976), as amended.

From the record before us, we conclude that the case was submitted to the trial judge on the pleadings. The same trial judge had previously heard facts and arguments in the case of *Tall Tower, Inc. v. South Carolina Procurement Review Panel, supra,* and was familiar with the factual background of the case. The appealed order held that the lease was null and void because the Board had not promulgated a regulation providing for procedures for competitive bidding where feasible as mandated by § 11-35-1590.

Tall Tower took 57 exceptions to the appealed order. Charleston Television entered no additional sustaining grounds.

Since this action was brought under § 1-23-150, the trial judge's scope of review was, as ours is, limited to two questions, which are: (1) whether the application of Reg. 19-445.2120 either interferes with or impairs or threatens to interfere with or impair the legal rights or privileges of

Charleston Television and (2) whether Reg. 19-445.2120 exceeds or exceeded the authority of the Board.

Tall Tower forcefully asserts that there can be no ■ interference or impairment or threatened interference or impairment with the rights or privileges of Charleston Television because it did not exhaust its administrative remedy by petitioning pursuant to § 1-23-126 for a regulation providing for procedures for competitive bidding where feasible. We agree.

Section 1-23-150(b), under which Charleston Television ■ sion asserts its right of action, is limited to plaintiffs affected by the regulation at issue. Charleston Television cannot reasonably claim to be affected by Reg. 19-445.2120 because, among other reasons, it failed to seek relief under § 1-23-126 to further its purported interest in a regulation providing for competitive bidding procedures where feasible. The thrust of its contention is that Reg. 19-445.2120 is invalid only because the Board promulgated no regulation on competitive bidding. This argument suggests that Charleston Television would not challenge Reg. 19-445.2120 if it were accompanied by competitive bidding procedures. Logically, then, Charleston Television should have attempted to invoke the readily available rulemaking procedure of § 1-23-126. Since Charleston Television did not avail itself of this remedy, any contention that it is affected by Reg. 19-445.2120 is at best premature.

The United States Supreme Court has spoken clearly to this issue by holding "the long settled rule of judicial administration is that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 50-51, 58 S. Ct. 459, 463, 82 L. Ed. 638, 644 (1938). Although our state courts have not addressed exhaustion of remedies as relating to § 1-23-150, our Supreme Court has endorsed the necessity of exhaustion of administrative remedies before appealing to the Court of Common Pleas and reached the same conclusion as that set forth by the United States Supreme Court in *Bethlehem Shipbuilding. Lominick v. City of Aiken*, 244 S. C. 32, 135 S. E. (2d) 305 (1964). And this is the same rule applied by those states which have adopted the Model State Admin-

istrative Procedure Act. *See* annotations to Unif. State Administrative Procedure Act § 15, 14 U.L.A. 429-441 (1980).

Because Charleston Television did not exhaust its administrative remedies by petitioning the Board pursuant to § 1-23-126 for the promulgation of a regulation providing for procedures for competitive bidding where feasible, it cannot now be heard as to any interference or impairment or threatened interference or impairment of its legal rights. And we so hold.

We now turn to the issue of whether the promulgation of Reg. 19-445.2120 by the Board exceeded its authority. The appealed order simply held that because the Board had failed to promulgate a regulation providing for procedures for competitive bidding where feasible, the Board exceeded its authority in promulgation Reg. 19-445.2120. The effect of the appealed order is that where there is a lack of a promulgation of such a regulation for procedures for competitive bidding where feasible, the lack is equivalent to an excess. We disagree.

Section 11-35-1590, as noted by our emphasis in setting forth the words of the statute, provides that when the governmental body (ETV) and the Division (General Services) agree that the property to be leased meets the necessary requirements *and* the standards for state leasing as prescribed in regulations of the Board as provided for in subsection (3), the Division shall approve the proposed lease. The record reflects that ETV and the Division agreed to the lease to Tall Tower. In the absence of any proof to the contrary, public officers are presumed to have properly discharged duties of their offices and to have faithfully performed the duties with which they are charged. *South Carolina National Bank v. Florence Sporting Goods*, 241 S. C. 110, 127 S. E. (2d) 199 (1962). Based on this presumption and in the absence of any contra proof to the effect that competitive bidding was feasible, we hold that ETV and the Division complied with the requirement of § 11-35-1590(2) insofar as it was possible for these two governmental bodies to comply with the statute.

Because there was no existing regulation for procedures providing for competitive bidding *where feasible*, ETV and the Division, it is presumed, agreed only that competitive bidding was not feasible.

The authority to promulgate a regulation where competitive bidding is feasible for procedures relating to such is that of the Board's and neither ETV's nor the Division's. Here such procedures would be superfluous. Neither the situation nor § 11-35-1590 warranted such procedures because of the presumed agreement by ETV and General Services that competitive bidding was not feasible. Furthermore, § 11-35-1590 mandates the negotiation process, as has been held by our Supreme Court. We quote from *Tall Tower, Inc. v. South Carolina Procurement Review Panel, supra:*

> Section 11-35-1590 and the regulation call a negotiation process for real estate leases and are exempt from the criteria notice requirements necessary under the competitive sealed bidding of Section 11-35-1520.
>
> \* \* \* \* \* \*
>
> The record is replete with evidence of ETV's substantial compliance with the negotiation process mandated by Section 11-35-1590. [Emphasis ours.]

294 S. C. at 234, 363 S. E. (2d) at 687-688.

The Supreme Court's interpretation of § 11-35-1590 is sound. The statute requires promulgation of "procedures for competitive bidding *where feasible.*" We interpret this language as a recognition of the obvious fact that the leasing of real property does not lend itself readily to competitive bidding. There are often too many variables to allow price to be the determinative factor.

In our opinion, the statute requires the Board to promulgate bidding procedures only in situations when competitive bidding is determined to be feasible. It does not require the promulgation of procedures for determining when competitive bidding is feasible. In fact, the Board has no exclusive statutory authority to make such a determination. As best we can infer, under § 11-35-1590(2) that determination would be a joint function of the Division of General Services and the appropriate governing body. The absence, therefore, of bidding procedures is not fatal unless it is shown that competitive bidding was feasible. As a complaining party, Charleston Television must allege and

prove feasibility before it can complain of the absence of bidding procedures; it offered no witness, document or affidavit to establish that competitive bidding was feasible. Charleston Television was factually correct in asserting in its petition the presence of two vendors with substantially the same product; however, given the multitude of factors involved in leasing real property, the existence of competition did not necessarily warrant competitive bidding. Since there is no such proof, we hold that this contention presented by Charleston Television must fail, because, *premised* upon the agreement by ETV and the Division that competitive bidding was not feasible, Reg. 19-445.2120 *came into play* and provided for a negotiation process in which Charleston Television, represented by able counsel, participated fully. And, as the Supreme Court said, the record before us is replete with evidence of ETV's substantial compliance with the negotiation process mandated by § 11-35-1590.

Moreover, had Charleston Television really believed that competitive bidding was feasible, its remedy, as we have held above, would have been to petition the Board pursuant to § 1-23-126 for the promulgation of a regulation providing for procedures for competitive bidding because such was feasible in the lease of the television antenna. Because Charleston Television failed to exhaust this administrative remedy, its petition should have been dismissed. The language of § 1-23-126 is plain in that it is the section under which an interested person seeks to have a regulation promulgated. The section goes right to the heart of this contention of Charleston Television. In construing § 1-23-126 and § 11-35-1590, this Court must presume that the legislature intended to accomplish something with each statute and not to engage in a futile action. *State ex rel. McLeod v. Montgomery,* 244 S. C. 308, 136 S. E. (2d) 778 (1964). It is our opinion that the legislature by enacting § 1-23-126 had in mind just such a situation as is presented by this case. And we so hold.

For the above reasons, we hold that Charleston Television failed to establish that Reg. 19-445.2120 either interferes with or impairs or threatens to interfere with or impair its legal rights or privileges *or* that the

regulation exceeds the regulatory authority of the agency. The appealed order was therefore erroneous and we so hold. Accordingly, the appealed order is reversed, and the case remanded with directions to enter judgment in accordance with this decision.

Reversed and remanded.

BELL, J., concurs in separate opinion.

CURETON, J., dissents in separate opinion.

BELL, Judge (concurring):

In my opinion, the judgment should be reversed.

Charleston Television commenced this proceeding pursuant to Section 1-23-150, Code of Laws of South Carolina, 1976, challenging the validity of Regulation 19-445-2120, which governs the leasing on non-State-owned real property by State agencies. In essence, Charleston Television claims the Regulation is invalid because it does not provide, as required by statute, any procedures for competitive bidding on State leases in those cases where competitive bidding is feasible.

In its declaratory order, the Budget and Control Board found that *prior to* the submission of lease proposals in this case, the Division of General Services determined that competitive bidding was not feasible. This finding was not disturbed by the circuit court and no exception was taken to it by cross appeal to this Court. Thus, the case comes to us as one in which competitive bidding is not feasible.

Section 1-23-150(a) permits "any person" to petition a State agency for a declaratory ruling challenging the authority of the agency to promulgate a particular regulation. After seeking administrative review before the agency, "any person affected by" the provisions of the regulation may seek judicial review in the circuit court. Section 1-23-150(b). The text of subsection (b) makes it clear that the right to seek judicial review is more restricted than the right to seek administrative review. *Any* person may seek to have the agency reconsider its regulation; but only a person who is adversely affected by the regulation may challenge it in court.

Since competitive bidding on the contested lease was not feasible, it made no difference in this case whether the Board had a regulation for competitive bidding or not. Had such a regulation existed, it would have given Charleston Television no legal right or privilege to competitive bidding on the lease, since it would not have applied in this case. Conversely, no interest of Charleston Television in procuring the contested lease has been affected by the failure of the Board to promulgate procedures for competitive bidding for those cases where such bidding is feasible. In other words, on the facts presented, Charleston Television is not a "person affected by" the challenged regulation, as required by subsection (b). For this reason, I would hold it has no standing under Section 1-23-150 to challenge the regulation in court. *Cf., Anders v. South Carolina Parole and Community Corrections Board,* 279 S. C. 206, 305 S. E. (2d) 229 (1983) (where plaintiff lacks standing, court does not have subject matter jurisdiction).

The wisdom of restricting the right of judicial review of regulations to those persons actually affected by them is demonstrated in this case. If the statute imposed no restriction on judicial review, any person could come in from the street and, by persuading the court that the Board should have promulgated regulations for competitive bidding, invalidate all existing State leases of real estate. Even in today's atmosphere of relaxed rules of standing, such drastic power should not be afforded to one who has no direct interest affected by the regulation.

I conclude with a final observation. The opinions of my brethren contain lengthy discussions about the requirement of exhaustion of administrative remedies under Section 1-23-126, Code of Laws of South Carolina, 1976. Since Charleston Television did not proceed under that statute, it seems to me unnecessary to reach the issue at all.

CURETON, Judge (dissenting):

I would uphold the trial court's ruling that Regulation 19-445.2120 of the South Carolina Budget and Control Board (Board) does not comply with Section 11-35-1590, Code of Laws of South Carolina, 1976 as amended, and the lease awarded by South Carolina Educational Television (ETV) to

Tall Tower, Inc., (Tall Tower) is void as not having been approved and awarded in conformance with statutory law.

The issues of merit presented to the trial judge and this court are whether (1) Charleston Television exhausted the administrative procedures provided by Section 1-23-126, (2) Regulation 19-445.2120 exceeds the regulatory authority of the Board, and (3) the trial judge erred in not ruling Charleston Television was estopped from raising the issues asserted.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Appellants argue that because Charleston Television failed to petition the Board to promulgate a regulation providing for competitive bidding where feasible, it failed to exhaust its administrative remedies. I disagree. Under *South Carolina Code Ann.* Section 1-23-126 (1986), an interested party may petition an agency in writing for the promulgation of a regulation. The agency is required within 30 days to either deny the petition or initiate action to promulgate the regulation. This Section is closely modeled after Section 6 of the 1961 version of the Uniform Law Commissioners' Revised Model State Administrative Procedure Act. 14 *U.L.A.* 400 (1961). It furthers the objective of providing public access to state agencies and making state agencies more responsive to the public. *See* D. Shipley, *South Carolina Administrative Law* 4-25 (1983); Annual Survey, *Administrative Law*, 30 S. C. L. Rev. 1, 10 (1979); Act No. 442, 1980 *S. C. Acts* 1342 (title indicates *inter alia* it is an act "to Authorize The Public To Request The Promulgation, Repeal And Amendment of Regulations"). The Supreme Court of Iowa announced the purpose of a similar provision of that state's code in *Community Action Research Group v. Iowa State Commerce Commission*, 275 N. W. (2d) 217 (Iowa 1979). The court stated:

[T]he purpose ... is 'to enable interested persons, on their own initiative, to induce a reasoned consideration of the propriety of the issuance, amendment, or repeal of a rule by those authorized to make and modify rules [citation omitted] ... this provision allows the public to prod an agency to action in a way that seeks to ensure

that those satisfied with the status quo are forced to re-examine their positions in light of new views and changed conditions.'

*Id.* at 220.

Under this type of provision, an agency is required only to give fair consideration to the propriety of issuing a proposed regulation. It is not required to take a stand on the substantive issues that prompted the request for the proposed regulation. 73 C. J. S. *Public Administrative Law and Procedure* Section 103 (1983).

Although Section 1-23-126 provides a method of public access to the rule making procedure, the legislature did not intend that an aggrieved party must invoke the petition process prior to challenging the validity of a regulation under the provisions of Section 1-23-150. This is evident for several reasons. First, Section 1-23-126, when read in conjunction with other provisions of Article I of Chapter 23 (i.e. the rule making provisions as opposed to the Article III adjudicative provisions), contemplates that even after an agency decides to promulgate a proposed regulation it must comply with all of the procedures of Article I for promulgating regulations including notice to the public, filing, public participation and legislative review. It would appear to be highly unlikely that the Legislature would require an aggrieved party to undergo this time consuming procedure as a prerequisite to contesting the validity of a regulation.[1] Second, Section 1-23-126 is silent as to what may be done if an agency fails to respond to a petition to promulgate or responds in a manner adverse to the petitioner. D. Shipley, *South Carolina Administrative Law* 4-25 (1983).[2] Third, in contrast to orders in contested cases, regulations are nor-

---

[1] In fact the 1981 version of the Uniform Law Commissioners' Model State Administrative Procedure Act declares in Section 5-107 that "a petitioner for judicial review of a rule need not have participated in the rule-making proceeding upon which that rule is based, or have petitioned for its amendment or repeal." 14 *U.L.A.* 144 (Supp. 1988).

[2] Although there is a dearth of authority on the subject, one jurisdiction has held that a proceeding under a section similar to Section 1-23-126 is not a *contested case* and thus judicial review may be unavailable under Section 1-23-380 which refers to a final decision in a contested case. *See Community Action Research Group v. Iowa State Commerce Commission,* 275 N. W. (2d) 217 (Iowa, 1979).

mally prospective in their operation. *Id.* at 4-50. Fourth, regulations are ordinarily adopted to affect the public as a whole and not to resolve ongoing disputes between specific parties. Finally, I read Charleston Television's petition not to request the Board to promulgate a regulation but as an attack upon the validity of the questioned regulation. I, therefore, would hold Section 1-23-126 does not require Charleston Television to petition for the promulgation of a regulation providing for competitive bidding as a prerequisite to seeking relief under Section 1-23-150.

## VALIDITY OF REGULATION
### 19-445.2120

A state board is a creature of statute and its authority is dependent upon statute. *Brooks v. South Carolina State Board of Funeral Service,* 271 S. C. 457, 247 S. E. (2d) 820 (1978). It is axiomatic that a state board may make only such rules as authorized by its enabling legislation. *Banks v. Batesburg Hauling Co.,* 202 S. C. 273, 24 S. E. (2d) 496 (1943). It is also well settled that an administrative regulation which materially alters or adds to the law is invalid. *Society of Professional Journalists v. Sexton,* 283 S. C. 563, 324 S. E. (2d) 313 (1984); *Milliken and Company v. South Carolina Department of Labor,* 275 S. C. 264, 269 S. E. (2d) 763 (1980); *Brooks v. South Carolina State Board of Funeral Service, supra; Banks v. Batesburg Hauling Co., supra.*

Appellants argue Section 11-35-1590(3) is directory and not mandatory. Statutes, or particular provisions of statutes, may be mandatory or directory. 73 Am. Jur. (2d) *Statutes* Section 14 (1974). Ordinarily, use of the word "shall" in a statute means the action referred to is mandatory. *South Carolina Department of Highways and Public Transportation v. Dickinson,* 288 S. C. 189, 341 S. E. (2d) 134 (1986). Where a statute's purpose is protection of public or private rights, as opposed to merely providing guidance to government officials, courts will usually interpret "shall" in a statute to impose mandatory rather than directory duties. *South Carolina Wildlife Federation v. Alexander,* 457 F. Supp. 118 (D. S. C. 1978). Compliance with mandatory provisions of a statute is "a condition precedent to the privilege conferred." 73 Am. Jur. (2d) *Statutes* Section 16 at 278 (1974).

A close reading of 11-35-1590 convinces me the Legislature intended the requirements of the Section to be mandatory.

Section 11-35-1590(1) makes compliance with the provisions of the section mandatory in the leasing of real estate by state governmental bodies. Section 11-35-1590(2) limits the Board's approval authority to space that meets the standards prescribed in regulations provided for in Section 11-35-1590(3) The Board was not free to adopt a regulation that reduced these minimum requirements. *Brooks v. S. C. State Board of Funeral Service, supra; Lake v. Mercer*, 216 S. C. 391, 58 S. E. (2d) 336 (1950).

Legislative policy, as set forth in Section 11-35-20(c) of the Consolidated Procurement Code, requires the "adoption of competitive procurement laws and practices by units of state and local governments." The Board has promulgated a regulation which clearly provides on its face that *all* leases of non-state owned property shall be acquired by *negotiation*.[3] Such a regulation fails to require competitive bidding of leases even where competitive bidding is feasible. The Board clearly exceeded the authority granted to it by the Legislature.

The appellants next argue that because the record contains no evidence competitive bidding was feasible the statute is inapplicable to this lease, and thus, Charleston Television has not been prejudiced by the promulgation of the regulation. I disagree. Section 1-23-150 and general law permit a court to declare a regulation void if the regulation exceeds the regulatory authority of the agency. There is no requirement the court also find prejudice to the petitioner before it may issue a declaratory ruling of invalidity. *See LeCesse Bros. Contracting, Inc. v. Town Board of the Town of Williamson*, 62 A.D. (2d) 28, 403 N. Y. S. (2d) 950 (1978) (statutory requirements relating to bidding are enacted for the benefit of property owners and taxpayers, not for the benefit of bidders, and should be administered to accomplish that purpose fairly and reasonably with sole reference to the public interest); *see also* 64 Am. Jur. (2d) *Public Works and*

---

[3] *See Tall Tower Inc. v. South Carolina Procurement Review Panel*, 294 S. C. at 234, 363 S. E. (2d) at 687 (holding "the Regulation calls for a negotiation process for real estate leases").

*Contracts* Section 38 (1972). The Board's authority to approve the lease in question was conditioned upon the prior adoption of regulations specifying procedures for competitive bidding and criteria for determining when competitive bidding is not feasible. It becomes evident that a lease entered into under a regulation devoid of any mention of competitive bidding cannot be sustained. 17 C. J. S. *Contracts* Section 201 (1963). The fact the Board accepted a post-contract award determination that competitive bidding was not feasible is ineffective to validate the contract.

I also disagree with the notion that somehow Charleston Television is burdened with an unchallenged ruling that competitive bidding is not feasible under the facts of this case; that in any event it is not adversely affected by the absence of a regulation providing for competitive bidding and therefore is not an "affected" person with standing to pursue this declaratory judgment ruling. Because the trial judge concluded the Board had no authority to promulgate the contested regulation, he necessarily did not reach the question of the feasibility of competitive bidding. Surely Charleston Television who has expended time, effort, and money in submitting its bid under invalid regulatory procedures followed by the Division of General Services, and who has exhausted its administrative remedies, has standing to contest the validity of those procedures. *Bayne v. Florida State Board of Dispensing Opticians*, 212 So. (2d) 762 (Fla. 1968) (nonresident whose proposed work in Florida was blocked by administrative rule was affected by rule and may bring declaratory judgment action to test validity of rule); *see generally*, D. Shipley, *South Carolina Administrative Law* 4-65 (1983).

## ESTOPPEL AND WAIVER

Finally, appellants contend Charleston Television by participating in the lease negotiation process is estopped from contesting the validity of the regulation in question. I reject their contention.

The elements of equitable estoppel as outlined in the case of *Frady v. Smith*, 247 S. C. 353, 359, 147 S. E. (2d) 412, 415 (1966) are:

The elements of equitable estoppel as related to the party estopped are: (1) Conduct [sic] which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack [sic] of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

I am unable to gather from the record any evidence that the appellants satisfied the pertinent elements of estoppel as pertains to parties asserting estoppel. *See Corley v. Looper*, 287 S. C. 618, 340 S. E. (2d) 556 (Ct. App. 1986); *Bilton v. Best Western Royal Motor Lodge*, 282 S. C. 634, 321 S. E. (2d) 63 (Ct. App. 1984). "Moreover, estoppel may not be invoked to nullify a mandatory statutory restriction." *Freeman v. Fisher*, 288 S. C. 192, 194, 341 S. E. (2d) 136, 137 (1986). Even if Charleston Television's conduct amounts to a representation, appellants cannot claim reasonable reliance upon the representation in the face of a clear statutory mandate. *Freeman v. Fisher, supra.*