**William James HAGER, Petitioner–Appellant,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, Respondent–Appellee.**

No. 03–1039.

Court of Appeals of Iowa.

May 14, 2004.

Carter Stevens of Roberts, Cohrt, Stevens & Lekar, P.L.C., Waterloo, for appellant.

Thomas Miller, Attorney General, and Carolyn Olson, Assistant Attorney General, Ames, for appellee.

Considered by HUITINK, P.J., and VOGEL and MAHAN, JJ.

MAHAN, J.

William James Hager appeals a district court ruling affirming a decision of the Iowa Department of Transportation (DOT) that revoked his driver's license for two years. Hager contends the district court erred in denying his application for judicial review. We affirm.

***I. Background Facts and Proceedings.*** Hager was arrested for operating while intoxicated on October 9, 2002. He was initially stopped for speeding. The deputy observed that Hager's eyes were red and glassy and that there was a strong odor of alcohol inside his vehicle. Hager admitted he had consumed alcohol.[1] In addition, an open container was observed in his vehicle. Accordingly, the deputy requested Hager perform field sobriety tests. Hager told the deputy he had problems with his knees but that he could perform the tests. Hager failed several field tests, including the horizontal gaze nystagmus, the walk-and-turn and the one-leg stand. A preliminary breath screening test (PBT) indicated an alcohol concentration of .10 or more.[2] Hager was not allowed to physically see the results of the PBT. However, the deputy may have informed him the PBT indicated that his alcohol concentration was .10 or more.

Hager was read an implied consent advisory and then was asked to submit to an Intoxilyzer test. He was allowed to call and speak with an attorney. He then refused the test and also refused to sign the implied consent form.

---

1. Hager claims he consumed 26 ounces of beer.

2. At the time Hager was arrested, operating under the influence of alcohol required an alcohol concentration of .10 or more. Iowa Code § 321J.2 (2001).

The DOT revoked Hager's driver's license on the basis of his refusal to take the Intoxilyzer test. Hager requested a hearing, which was granted. He argued his refusal to submit to the Intoxilyzer test was invalid because he was not allowed to see the results of the PBT. The administrative law judge upheld the revocation. The revocation was affirmed on administrative appeal, and Hager filed a petition for judicial review. The district court denied Hager's application for judicial review in its entirety. The court found no merit in Hager's position stating:

> There is no statutory requirement or any authority in Iowa case law that requires that law enforcement provide the results of the preliminary breath test to the accused. In fact, quite to the contrary, the statute provides that a peace officer may request the operator to provide a sample of the operator's breath for a preliminary screening test. There is no absolute duty which requires the peace officer to request a preliminary breath test. A preliminary breath test is simply an investigatory device to determine whether or not an individual has engaged in illegal activity. It is similar to field sobriety tests in that it is subject to error and varying interpretations. Because there is no statutory requirement that the results be shown to the accused, the district court determines that the findings of the administrative agency are supported by substantial evidence and are not arbitrary nor capricious.

Hager appeals.

■ **II. Standard of Review.** Our review of the DOT's decision is governed by Iowa Code chapter 17A and is confined to the correction of errors at law. Iowa Code § 17A.19 (2003); *Pointer v. Iowa Dep't of Transp.*, 546 N.W.2d 623, 625 (Iowa 1996). In reviewing a district court decision on the validity of an agency action, we decide only whether the district court has correctly applied the law. *Litterer v. Judge*, 644 N.W.2d 357, 360 (Iowa 2002). The district court itself acts in an appellate capacity to correct errors of law on the part of the agency. *Houlihan v. Employment Appeal Bd.*, 545 N.W.2d 863, 865 (Iowa 1996); *Henry v. Iowa Dep't of Transp.*, 426 N.W.2d 383, 385 (Iowa 1988). When we review such an action by the district court, we merely apply the standards of section 17A.19(10) to determine whether our conclusions are the same as those of the district court. *Litterer*, 644 N.W.2d at 360. If the conclusions are the same, we affirm; otherwise we reverse. *Downing v. Iowa Dep't of Transp.*, 415 N.W.2d 625, 627 (Iowa 1987).

■ The burden of proof in an administrative license proceeding is totally on the licensee. *Scott v. Iowa Dep't of Transp.*, 604 N.W.2d 617, 620 (Iowa 2000). We will uphold the agency's action if supported "by substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f). Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings. *Pointer*, 546 N.W.2d at 625.

**III. Revocation of Driver's License.** Iowa Code section 321J.5 (2001) provides the requirements for the use of a preliminary screening test:

1. When a peace officer has reasonable grounds to believe that either of the following have occurred, the peace officer may request that the operator provide a sample of the operator's breath for a preliminary screening test using a device approved by the commissioner of public safety for that purpose:

(a) A motor vehicle operator may be violating or has violated section 321J.2 or 321J.2A.

2. The results of this preliminary screening test may be used for the purpose of deciding whether an arrest should be made or whether to request a chemical test authorized in this chapter, but shall not be used in any court action except to prove that a chemical test was properly requested of a person pursuant to this chapter.

In addition, section 321J.6(1) provides the prerequisite conditions that must exist before an officer may invoke implied consent:

A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens. . . . The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2 or 321J .2A, and if any of the following conditions exist:

(a) A peace officer has lawfully placed the person under arrest for violation of section 321J.2.

. . . .

(d) The preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2.

Hager challenges the revocation of his license. He argues an officer is required, as a condition precedent to implied consent, to provide PBT results to an individual. This would then allow that individual to make an informed decision on whether or not to provide a breath sample. This is the only issue raised on appeal. Although Hager challenged the reasonable grounds determination before the agency, and also

before the district court, he has not raised this as a separate issue on appeal. Although unnecessary to the resolution of the issue Hager raises, we conclude the reasonable grounds requirements of both code sections were met.

Hager was arrested and asked to submit to an Intoxilyzer test pursuant to Iowa Code sections 321J.6(1)(a) and (d). He refused to submit to the test, and his license was revoked. *See* Iowa Code § 321J.9. The surrounding circumstances, including the statements and conduct of the arrestee and police officer, are considered in determining whether a chemical test has been refused. *Ferguson v. Iowa Dep't of Transp.*, 424 N.W.2d 464, 466 (Iowa 1988). Anything less than an unqualified, unequivocal consent is a refusal. *Id.*

■ We note the deputy's refusal to visually show Hager the PBT results is of no consequence in this case because Hager was lawfully arrested and refused the Intoxilyzer test. The fact of his arrest, in and of itself, provides an independent basis to uphold his revocation under Iowa Code section 321J.6(1)(a).

Although we believe Hager's claim fails for that reason, we briefly mention the administration of a PBT. Section 321J.5(1) permits, but does not require, an officer to request a PBT for use as an early screening device. *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003). A PBT is a "quick, convenient test," to assist an officer in determining whether an arrest should be made. *State v. Deshaw*, 404 N.W.2d 156, 158 (Iowa 1987). There is no statutory requirement, nor any authority in Iowa case law, requiring law enforcement to provide PBT results to an individual.

■ Hager cites no authority in support of his claim that an individual must be provided results of a PBT before deciding

whether or not to agree to implied consent procedures. Instead, his argument is based on supposed public policy principles. We find his argument unpersuasive. We agree with the district court that a PBT is legislatively intended simply as a preliminary investigatory device for use by peace officers to help determine if an individual has engaged in illegal activity and an arrest should be made. Peace officers are under no duty to visually reveal or verbally inform an individual of the results of a PBT. To rule otherwise would negate the legislative intent that a PBT serve as a "quick, convenient test." We specifically hold that a peace officer is not required, as a condition precedent to implied consent, to provide PBT results to an individual.

**AFFIRMED.**