# IN THE SUPREME COURT OF IOWA

No. 07–0943

Filed July 31, 2009

MARC R. WALLACE, GREGORY A. WELLS,
SHANNON BOSWELL, MIKE MURRAY,
GAYLE J. MURRAY, KATHLEEN L. GINGERICH,
TRACY LYNCH, and SCOTT D. NEAL,

     Appellants,

vs.

IOWA STATE BOARD OF EDUCATION,

     Appellee,

DES MOINES INDEPENDENT COMMUNITY
SCHOOL DISTRICT BOARD OF DIRECTORS,

     Intervenor-Appellee.

---

Appeal from the Iowa District Court for Polk County, Donna L. Paulsen, Judge.

Parties challenging a school district's decision to close schools seek judicial review of the decision of the Iowa State Board of Education approving the closures. **AFFIRMED.**

Bruce E. Johnson of Cutler Law Firm, P.C., West Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Jeanie K. Vaudt, Assistant Attorney General, for appellee Iowa State Board of Education.

Andrew J. Bracken of Ahlers & Cooney, P.C., Des Moines, for intervenor-appellee Des Moines Independent Community School District Board of Directors.

**HECHT, Justice.**

The Iowa State Board of Education (ISBE) affirmed the Des Moines Independent Community School District's decision to close five schools. The appellants sought judicial review of the ISBE's decision. The district court affirmed the decision of the ISBE. On alternate grounds, we likewise affirm.

## I. Factual and Procedural Background.

In 1998, the General Assembly authorized a local option tax on sales and services for the purpose of raising revenue for school infrastructure improvements. *See* Iowa Code ch. 422E (1999).[1] The school districts in Polk County subsequently proposed, and the voters approved, a "Schools First" plan which called for the collection of a one-percent tax for a period of ten years commencing on July 1, 2000. The plan, insofar as it is relevant to this case, included a needs assessment for sixty school buildings in the Des Moines Independent Community School District (the District), provided a list of improvements projected for each school building should adequate tax revenue be generated, and represented "[m]ergers [would] only be undertaken with extensive public input."

In the fall of 2004, the District's staff undertook a top-to-bottom review of the plan's status. Focus groups were utilized and information was gathered from persons who had been involved in the design and construction of sixteen construction projects already completed under the plan at a cost in excess of $110,000,000. The staff also conducted, as part of the review, a study of the school buildings that had not yet been improved under the plan, focusing upon the anticipated cost of

---

[1]Prior to the commencement of this action, the local option tax for school infrastructure was transferred within the Code. *See* Iowa Code ch. 423E (2005).

projects contemplated at each venue. The information gathered in the course of the review was presented by the staff in a report to the District's school board at its meeting on February 15, 2005. The report revealed forecasts projecting tax revenue available for school improvements would fall short of earlier projections while costs of construction had increased during the plan's existence. The general discussion of the staff report during the February 15 board meeting included strategic options for dealing with the projected revenue shortfall and cost increases, including the possibility of school closures and postponement of some of the anticipated improvements.[2]

The board scheduled meetings in April 2005 to solicit public input on the status of the plan. The District's administrative staff presented to the board in early May 2005 a summary of the information derived from those meetings. The staff's recommendations for closure of six schools were presented in writing to the board later in the same month and discussed during the board's meeting on May 31, 2005. A timeline was approved by the board on May 31 for publication of proposed plan adjustments including six school closings, solicitation of additional public input, and decision by the board. After several additional public meetings were held, the board voted on July 12, 2005 to close five

---

[2]The published notice of the board's February 15 meeting did not include the subject of school closings as an agenda item. The written report presented by the staff at the meeting did not mention the possibility that schools might be closed. A staff member did, however, during the meeting inform the board that strategic options for dealing with the projected revenue shortfall and increasing construction costs might include school closures. The staff's written report and the board's discussion of it during the meeting did not explore which, or how many, schools might be closed if the closure option were to be chosen. It should be noted that eight of the District's schools merged to become four during the plan's existence prior to the February 15 meeting.

schools including Moore Elementary, Edmunds Academy, Adams Elementary, Cowles Elementary, and Central Campus.[3]

The plaintiff-taxpayers challenged the District's decision by filing an appeal affidavit with the ISBE.[4] They claimed the decision should be set aside because the District failed to comply with two administrative rules propounded by the ISBE prescribing procedural steps to be followed by school districts when making school closure decisions.[5] The District intervened in the administrative proceeding, challenging the ISBE's authority to promulgate rules limiting the District's discretion to close the five schools. In the alternative, the District claimed it substantially complied with the ISBE's rules in closing the schools. The ISBE affirmed the school closure decision, concluding it had authority to adopt rules regulating school closures and finding the District substantially complied with them.

The plaintiff-taxpayers filed a petition requesting judicial review of the ISBE's decision. The district court affirmed the ISBE's ruling, concluding the ISBE had authority to issue the rules in question and finding the record adequately supported the ISBE's determination that the District substantially complied with the applicable administrative rules.

---

[3]Howe Elementary, originally slated for closure, was spared as a consequence of the board's consideration of the staff's school closure recommendations.

[4]They also filed a certiorari action, but summary judgment was granted in favor of the District. *See Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 860 (Iowa 2008).

[5]The administrative rules which are the basis of the plaintiff-taxpayers' claims are set forth in their entirety below in division III of this opinion. The plaintiff-taxpayers' appeal affidavit also urged the ISBE to set aside the District's decision to close the schools on the ground it effected a change in the use of tax revenues without an authorizing election in violation of Iowa Code chapter 423E. As this claim was neither decided by the ISBE nor advanced in this appeal, we do not decide it.

On appeal to this court, the plaintiff-taxpayers contend the ISBE erred in its application of administrative rules regulating the District's school closing decision. In particular, the plaintiff-taxpayers assert the ISBE erred (1) in failing to conclude the process followed by the District in deciding to close the schools violated ISBE's rule 281—19.1 because the process did not "provide a full opportunity for public participation" or provide sufficient "public notice, public consideration and public involvement," and (2) in concluding the District substantially complied with the procedural steps mandated by rule 281—19.2. The District asserts the ISBE lacks authority to promulgate rules regulating school closure decisions, and in the alternative, that if such rules were within the ISBE's authority, the agency correctly concluded the District substantially complied with them. The ISBE contends it was authorized by the legislature to promulgate the subject rules and asserts it correctly concluded the District substantially complied with those rules.

## II. Scope of Review.

We review on appeal the decision of the ISBE, not the decision of the local district board. *Keeler v. Iowa State Bd. of Pub. Instruction*, 331 N.W.2d 110, 111 (Iowa 1983). Iowa Code chapter 17A governs judicial review of agency actions and defines the role of the courts as appellate in nature. *Iowa Planners Network v. Iowa State Commerce Comm'n*, 373 N.W.2d 106, 108 (Iowa 1985); *see* Iowa Code § 17A.19(10) (2005). We may reverse, modify, affirm or remand to the agency for further proceedings if the agency's action is affected by errors of law or is not supported by substantial evidence. *Sherman v. Pella Corp.*, 576 N.W.2d 312, 316 (Iowa 1998); *see* Iowa Code § 17A.19(10)(*f*).

**III. Discussion.**

In a 1977 agency decision, the State Board of Public Instruction (now known as the ISBE) recommended procedures for consideration by school districts contemplating school closings. *See In re Norman Barker, et al.,* 1 D.P.I. App. Dec. 145 (1977). The board adopted administrative rules in 2003 incorporating the essence of the former "recommended procedures":

> **281—19.1 Policy**. The board of directors of a school district has discretion as to the number of attendance centers it shall operate within the district. The process for determining whether to close an attendance center must involve public notice, public consideration and public involvement. The policies set forth in rule 281—19.2 are meant to ensure full opportunity for public participation in the relevant events. It is intended that the policies shall be implemented by local boards in such a way as will most reasonably accommodate the specific facts and circumstances surrounding the decision with which the local board is faced.
>
> **281—19.2 Attendance center closing procedure**. When making a decision regarding whether to close an attendance center within its district, the board of directors of a school district shall substantially comply with all of the following steps.
>
> **19.2(1)** The board shall establish a timeline in advance for carrying out the procedures involved in making the decision on the matter, focusing all aspects of the timeline upon the anticipated date that the board will make its final decision.
>
> **19.2(2)** The board shall inform segments of the community within its district that the matter is under consideration by the board. This shall be done in a manner reasonably calculated to apprise the public of that information.
>
> **19.2(3)** The board shall seek public input in all study and planning steps involved in making the decision.
>
> **19.2(4)** The board and groups and individuals selected by the board shall carry out sufficient research, study and planning. The research, study and planning shall include consideration of, at a minimum, student enrollment statistics, transportation costs, financial gains and losses, program offerings, plant facilities, and staff assignment.

**19.2(5)** The board shall promote open and frank public discussion of the facts and issues involved.

**19.2(6)** The board shall make a proper record of all steps taken in the making of the decision.

**19.2(7)** The board shall make its final decision in an open meeting with record made thereof.

Iowa Admin. Code rs. 281—19.1, .2 (2005).

The District asserts these administrative rules are void because the legislature did not give the ISBE authority to propound them. Agency rules are ordinarily given " 'the force and effect of law,' " provided they are " ' "reasonable and consistent with legislative enactments." ' " *Stone Container Corp. v. Castle*, 657 N.W.2d 485, 489 (Iowa 2003) (quoting *Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 835 (Iowa 2002)). However, agencies have " 'no inherent power and [have] only such authority as [they are] conferred by statute or is necessarily inferred from the power expressly granted.' " *Zomer v. W. River Farms, Inc.*, 666 N.W.2d 130, 132 (Iowa 2003) (quoting *Schmidt v. Iowa State Bd. of Dental Exam'rs*, 423 N.W.2d 19, 21 (Iowa 1988)). "To be valid, 'a rule adopted by an agency must be within the scope of powers delegated to it by statute.' " *Iowa Power & Light Co. v. Iowa State Commerce Comm'n*, 410 N.W.2d 236, 239 (Iowa 1987) (quoting *Iowa-Ill. Gas & Elec. v. Iowa State Commerce Comm'n*, 334 N.W.2d 748, 752 (Iowa 1983)). When rules adopted by an administrative agency exceed the agency's statutory authority, the rules are void and invalid. *See Motor Club of Iowa v. Dep't of Transp.*, 251 N.W.2d 510, 517–18 (Iowa 1977).

We have declined to find legislative authorization for agency rulemaking in the absence of a specific grant of authority. *See Litterer v. Judge*, 644 N.W.2d 357, 363–64 (Iowa 2002) (concluding authority of Secretary of Agriculture to adopt specifications for oxygenate octane

enhancers such as ethanol did not grant the Secretary authority to regulate the specific content of ethanol in fuel). The burden is on the party challenging an administrative rule to demonstrate that a "rational agency" could not have concluded the rule was within its delegated authority. *Davenport Cmty. Sch. Dist. v. Iowa Civil Rights Comm'n*, 277 N.W.2d 907, 909–10 (Iowa 1979).

As we have already noted, the subject rules were promulgated by the ISBE in 2003. *See* Attendance Centers, 25 Iowa Admin. Bulletin 1555 (filed May 9, 2003) (codified at Iowa Admin. Code ch. 281—19). At that time the ISBE was authorized to "[a]dopt rules under chapter 17A for carrying out the responsibilities of the department." Iowa Code § 256.7(5) (2003). We have previously concluded a general authorization of this type does not grant to an administrative agency unlimited power to regulate matters within the agency's expertise. *See Litterer*, 644 N.W.2d at 363–64; *Motor Club of Iowa*, 251 N.W.2d at 517–18. Although the legislature expressly authorized the ISBE to adopt rules on a multitude of subjects including the use of telecommunications as instructional tools, Iowa Code § 256.7(7) (2005), accrediting apprenticeship programs, *id.* § 256.7(13), administration of teacher exchange programs, *id.* § 256.7(15), setting standards for approval of family support training programs, *id.* § 256.7(16), and requiring school districts to waive school fees for indigent families, *id.* § 256.7(20), legislative authorization for the ISBE's adoption of rules prescribing the procedure school districts must follow in making school closing decisions is noticeably absent in the Code. The legislature's decision to withhold from the ISBE such prescriptive authority fits quite comfortably with the grant to school districts of "exclusive jurisdiction in all school matters," *id.* § 274.1, power to "fix the site for each schoolhouse," *id.* § 297.1,

discretion to "determine the number of schools to be taught . . . [and] the particular school each child shall attend," *id.* § 279.11, and authority to "establish and maintain attendance centers based upon the needs of the school age pupils enrolled in the school district," *id.* § 280.3. Given the broad express powers granted by the legislature to local districts in such matters, and the notable absence of a legislative grant to the ISBE of authority to adopt rules regulating school closure decisions, we conclude a rational agency could not conclude it had authority to propound rules 19.1 and 19.2.[6] The rules were based on the ISBE's erroneous interpretation of the statutes prescribing the scope of the agency's rulemaking authority, and thus were "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the [ISBE]." *Id.* § 17A.19(10)(*c*). Accordingly, the rules are void.

As we have decided the subject rules are void, we do not consider further the plaintiff-taxpayers' claims that the ISBE erred in failing to set aside the District's decision to close the schools as a consequence of noncompliance with those rules. The District's decision to close some of its schools clearly entailed discretion. Accordingly, the proper nature of the ISBE's review of the District's decision is for abuse of discretion. *See Sioux City Cmty. Sch. Dist. v. Iowa Dep't of Educ.*, 659 N.W.2d 563, 568 (Iowa 2003) (noting that "where a statute provides for a review of a school district's discretionary action, the review, by necessary implication, is limited to determining whether the school district abused its discretion").

---

[6]The ISBE also relies upon its authority to hear appeals from the decisions of school district boards as evidence of the legislature's intent to confer rulemaking authority on the subject of school closures. *See* Iowa Code §§ 256.7(6), 290.1. We find no support for the ISBE's contention that the legislature's grant of power to review the decisions of school districts is tantamount to a grant of authority to prescribe rules regulating procedures to be followed in deciding whether to close schools.

Having preserved for our review no claims that the ISBE erred in failing to find an abuse of discretion by the District apart from the claimed failure to comply with the ISBE's void rules, the plaintiff-taxpayers' appeal must fail.

**AFFIRMED.**

All justices concur except Appel, J., who takes no part.